IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:23-CR-243 |
| | § | Chief Judge Mazzant |
| LASHONDA MOORE (1) | § | |
| MARLON MOORE (2) | § | |

## UNITED STATES' MOTION IN LIMINE

The United States moves *in limine* for the Court to direct the defendants, counsel for defendants, and all witnesses for the defendants not to mention, refer to, interrogate concerning, or bring to the attention of the jury in any manner, directly or indirectly, any of the below listed matters without first approaching the bench and obtaining a ruling on their admissibility. The specific matters are as follows:

### 1)    Discussion of the victims' negligence.

The defendants' intent and alleged criminal conduct—not the victims' negligence or lack of attention—are at issue in this case. It is improper under Fed. R. Evid. 403 to argue, suggest, or blame the defendants' conduct on the victims' negligence, as it both confuses the issues and misleads the jury. Furthermore, the Fifth Circuit has expressly held that a victim's negligence is no defense against criminal conduct. *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980) ("The victim's negligence is not a defense to criminal conduct. . . . The laws protecting against fraud are most needed to protect the careless and the naive from lupine predators, and they are designed for that purpose.") (internal citations omitted); *Blachly v. United States*, 380 F.2d 665, 672 n.13 (5th Cir. 1967) ("[T]he

United States' Motion *in Limine* - 1

monumental credulity of the victim is no shield for the accused.") (internal citations omitted).

**2)** **<u>Raising an advice-of-counsel defense without notice or providing discovery.</u>**

The United States moves to preclude testimony or evidence that either defendant sought or received legal advice or relied upon legal advice relating to the matters at issue in the case. The Court should prohibit defendants from asserting an advice-of-counsel defense at trial because defendants have failed to (i) provide reasonable notice of the specific advice that defendants intend to rely on for any advice-of-counsel defense; (ii) identify the specific attorneys who provided the relied upon advice; and (iii) produce discoverable materials relevant to the advice-of-counsel defense.

Since December 2024, the government has proactively sought defendants' positions on whether they intended to assert an advice-of-counsel defense at trial. *See* ECF No. 39-2 (Government's December 2, 2024 letter to counsel requesting "reasonable notice of any advice-of-counsel defense that [defendants] plan to assert at trial."). The government renewed its requests for notice and discovery of any advice-of-counsel defense in January 2025, November 2025, and December 2025.

Most recently, on December 12, 2025, the government sought each defendant's position on this motion *in limine* through counsel. The government requested defendants' position by December 15, 2025, and the government has not received a response as of the time of this filing.

The advice-of-counsel defense is a fact-intensive defense that is likely to create

substantial problems of fairness and efficiency if raised for the first time during the trial. *United States v. Dallmann*, 433 F. Supp. 3d 804, 811 (E.D. Va. 2020) (citing *United States v. Mubayyid*, 2007 WL 1826067, at *2 (D. Mass. June 22, 2007)).  In the Fifth Circuit, an advice-of-counsel defense has four elements: (1) before taking action, the defendant in good faith sought the advice of an attorney; (2) for the purpose of securing advice on the lawfulness of potential future conduct; (3) gave a full and accurate report of all material facts; and (4) the defendant acted strictly in accordance with the attorney's advice.  *United States v. Shah*, 95 F.4th 328, 378 (5th Cir. 2024).  Determining whether each prong of the defense can be satisfied is a fact-intensive inquiry concerning potentially privileged communications.

As the government stated more fully in its January 2025 opposed motion (ECF No. 39) in advance of the earlier February 2025 trial date, because the elements of an advice-of-counsel defense require analysis of communications between a defendant and his or her attorney, assertion of an advice-of counsel defense necessarily waives the attorney-client privilege. *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 n.18 (5th Cir. 1999).  Numerous courts have compelled criminal defendants to produce reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure concerning an advice-of-counsel defense. *See, e.g.*, *United States v. Cooper*, 283 F. Supp. 2d 1215, 1225 (D. Kan. 2003) (ordering defendant to produce documents and objects pursuant to Rule 16(b)(1)(A) concerning his advice-of-counsel defense no later than 14 days before trial); *United States v. Crowder*, 325 F. Supp. 3d 131, 139 (D.D.C. 2018) (discovery of advice-of-counsel defense to be provided not later than two weeks before trial is scheduled to begin); *United States v. Parks*,

United States' Motion *in Limine* - 3

2022 WL 2916080, at *2 (N.D. Okla. July 25, 2022) (any production of discoverable materials concerning an advice of counsel defense should be made 14 days before trial); *United States v. Salzano*, 2024 WL 640751, at *3 (D.N.J. Feb. 15, 2024) (ordering discovery of advice-of-counsel materials two weeks before trial).

To date, neither defendant has identified the relied-upon advice, nor identified the relevant advising attorneys, nor produced any discovery to the government. Unless defendants do so sufficiently in advance of trial, the Court should disallow any testimony or evidence that either defendant engaged or involved counsel in the matters at issue in the case, including but not limited to (i) any assertion by counsel or defendant of a defendant's good-faith reliance on advice of counsel; or (ii) any assertions by counsel or defendants that they acted in good faith because of their reliance on counsel, or on another co-conspirator's counsel, and therefore did not willfully join the conspiracy.

Prior to making such claims, the defendant must provide to the government all evidence pertaining to that advice, including the names of the attorneys on whose advice defendant relied, all statements of those attorneys and summaries of interviews with those attorneys, all correspondence and communications directed to those attorneys concerning the subject matters at issue, all other facts relied upon by the attorneys when formulating the advice given, all communications containing the advice from counsel, and any other materials which tend to prove or disprove the advice-of-counsel defense, as well as provide access to such attorneys in order that the government may interview them concerning their representation and advice. Without these disclosures, the defense should be disallowed.

3)      **Any statement or argument calling overtly or tacitly for jury nullification.**

Jury nullification is not a legally sanctioned function of the jury, and counsel is not permitted to present the concept of jury nullification to the jury, let alone encourage it. *See, e.g., United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) (holding that "defendant has no right to invite the jury to act lawlessly"); *see also United States v. Thompson*, 253 F.3d 700 (5th Cir. 2001) ("Jury nullification is not a 'right' belonging to the defendant." (citation omitted)). This prohibition includes any statement encouraging the jury not to follow the law or the Court's instructions. This includes, but is not limited to, the following topics:

a. Any discussion of nullification or invitation to contravene the law or this Court's instructions related to conspiracy to commit wire fraud, wire fraud, or money laundering.

b. Any testimony regarding the effect of these proceedings upon defendants' families or any appeal for pity for the defendants or their families.

d. Any argument, questioning, or discussion of the propriety of the government's charges in this case or the return of the indictments by the Grand Jury.

4)      **Challenges to the constitutionality of the laws of the United States or the jurisdiction of this Court.**

The defendants have previously submitted *pro se* filings with the Court, including so-called Notices of "Non-Consent, Non-Contract Status, and Documented Misconduct" (ECF No. 157), "Non-Transport, Non-Participation, and Administrative Conflict" (ECF No. 159), and various "affidavits" challenging the lawfulness of this Court's orders as to the defendants. *E.g.*, ECF Nos. 82, 83, 86, 87. Although defendants' filings do not explicitly take the position that defendants are "sovereign citizens" immune from the laws

of the United States, the gravamen of the argument is similar. The government expects that if the defendants take the witness stand, they may attempt to testify about their views on the Court's jurisdiction over them and the asserted illegitimacy of the prosecution.

These arguments are irrelevant to the factual issues in the trial and have no place before a jury. *See* Fed. R. Evid. 401, 402, 403. "In our judicial system the court instructs the jury on the applicable law, and directs the jury to determine the facts from the evidence and to apply the law as given by the court to those facts. The law is neither introduced as evidence nor presented through witnesses at trial." *United States v. Garber*, 589 F.2d 843, 849 (5th Cir. 1979). Furthermore, "it is within the sole province of the court to determine the applicable law and instruct the jury as to that law." *United States v. Hill*, 167 F.3d 1055, 1069 (6th Cir. 1999) (citation omitted). Accordingly, "[t]o permit a witness to testify in the presence of the jury on the proper interpretation of the law would impermissibly infringe on the function of the court and would risk serious confusion of the jury." *Garber*, 589 F.2d at 849.

Assertions of exemption from the jurisdiction of federal courts have been universally rejected. "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. *See also, e.g.*, *United States v. Delatorre*, No. 03 CR 90, 2008 WL 312647, at *2 (N.D. Ill. Jan. 30, 2008) ("This Court's jurisdiction over Mr. Delatorre remains valid whether his name is written in all capital letters or a mix of capital and lower case letters, or whether he identifies himself as: a 'real flesh and blood man, in his private capacity,' a 'sovereign secured party creditor;' a debtor; the 'authorized

United States' Motion *in Limine* - 6

representative of the corporate fiction-entity/debtor identified, as Fernando Delatorre,' or 'third party intervenor on behalf of Defendant/Debtor Fernando Delatorre.'").

If the defendants seek for the jury to be instructed on a question of law, they may move through their appointed counsel for the inclusion of an appropriate jury instruction to be delivered by the Court. Otherwise, this Court should strictly prohibit questioning, testimony, and evidence to the effect that the defendants are not properly on trial for the crimes with which they have been charged.

**5)      Prison conditions or the defendants' incarceration status.**

Conditions in federal prisons or prison camps are irrelevant, and their mention should be prohibited. Likewise, the fact that the defendants are detained pending trial is not relevant to the legal issues in the case, and defendants should not be permitted to testify or otherwise present evidence as to their incarceration.

**6)      Sentence or punishment.**

Any reference to punishment or sentence the defendants may face should be prohibited. "Punishment is a matter exclusively within the province of the court and is not to be considered by the jury in arriving at an impartial verdict." *Rogers v. United States*, 422 U.S. 35, 40 n.2 (1975) (citation modified).

**7)      Prohibited hearsay testimony.**

The parties are barred by the rule against hearsay from eliciting testimony about what was told to a witness by someone else unless an exception to the hearsay rule applies. *See* Fed R. Evid. 801. For example, the defense is generally barred from eliciting from a victim what a defendant said to them. This would be an out-of-court statement by someone

other than the witness offered to prove the truth of the matter asserted. Fed R. Evid. 801(c).

Moreover, the defendants may not refer in any way to any statements that the defendants or co-conspirator may have made outside of court unless the statements are admitted into evidence as part of the United States' case. The defendants cannot inquire into or present their own statements if the United States does not introduce the statements. A defendant's statement is hearsay without an exception if offered by the defendant.

Here, the government anticipates offering into evidence defendants' out-of-court statements, including recordings of defendants' oral statements, defendants' statements in emails, and defendants' statements in text messages. Under the party opponent exception to the hearsay rule (Fed. R. Evid. 801(d)(2)(A)) the government *is* permitted to elicit this *same* testimony from the witness, because in this context it is being offered "against an opposing party." *Id*. Consequently, a defendant may not offer or refer in any way to any statements he or she, or a co-defendant or co-conspirator, may have made *unless* the statements are admitted into evidence as part of the United States' case. *See United States v. Willis*, 795 F.2d 1486, 1501 (11th Cir. 1985) (upholding the exclusion of defendant's allegedly exculpatory statements at the time of his arrest" because it is "precisely what is forbidden by the hearsay rule").

**8)     Impeachment of a witness with a statement that witness has neither written nor adopted as his or her own.**

The *Jencks* Act, 18 U.S.C. § 3500, requires the government to furnish the defense with any statement made by a government witness which has been adopted or approved by the witness and which relates to his testimony at trial. The Congressional policy behind the

United States' Motion *in Limine* - 8

*Jencks* Act was to protect witnesses from being impeached with words that are not their own or are an incomplete version of their testimony. *See generally Palermo v. United States*, 360 U.S. 343 (1957).

Statements made by a witness and summarized by a third person can be *Jencks* material but only if the witness has signed or otherwise adopted or approved them. *United States v. Newman*, 849 F.2d 156, 160 (5th Cir. 1988) (citing *Campbell v. United States*, 365 U.S. 85 (1961)). Adoption or approval requires either that the agent read the entire statement to the witness or that the witness read the statement. Then the witness must manifest his or her assent by either signing or otherwise approving the statement. *Id.*

In this case, law enforcement agents interviewed the witnesses, took notes, and drafted summaries of the interviews. However, unless it is specifically noted in an agent's report, the witnesses have not adopted or approved of the statements. Consequently, the agents' notes and reports are not the statements of the witnesses and cannot be used to impeach the witness.

### 9)   Questions regarding witness Donna Patterson's employment.

The United States expects to call Donna Patterson as a witness at trial. Ms. Patterson is expected to testify that she paid thousands of dollars into the defendants' group, all of which she lost. Ms. Patterson is currently employed by Immigration and Customs Enforcement ("ICE"), within the U.S. Department of Homeland Security.

The Court should preclude any questioning or reference to Ms. Patterson's present employment at ICE, which would serve no purpose other than to inflame the passions and prejudices of potential jurors. Ms. Patterson was not employed at ICE during her

United States' Motion *in Limine* - 9

participation in BINT, and her current employment is irrelevant to her testimony and the factual issues at trial.

**10) <u>Calls for sympathy.</u>**

Any action or statement to elicit pity or sympathy for defendants through their families, children, or friends, or any statement regarding the effects on the defendants' families, children, or friends caused by this prosecution or possible convictions is improper and should be prohibited.

**11) <u>Defendants' family and children.</u>**

Testimony or evidence about the defendants' children or family is irrelevant and should be prohibited, unless the proponent can articulate a relevant and admissible basis to introduce such evidence.

**12) <u>Prior "good" behavior of defendants and unapproved reputation and character testimony of defendants.</u>**

Reputation/character evidence pertaining to the defendants should be limited in the following ways: (1) the character trait at issue must be pertinent to the crimes charged in the indictment; (2) the defendant may not prove his or her character through specific acts of good conduct, only through reputation and/or opinion testimony; and (3) the trial court may limit the number of character witnesses a defendant may call.

*a. Character trait must be relevant.*

Before offering character evidence, a defendant must show that the evidence is relevant to the crimes charged in the indictment. Under Federal Rule of Evidence 404(a)(1), a defendant may elect to offer evidence of "a pertinent trait of character." The trait of

character that the defendant is seeking to prove must be "pertinent" to the crimes charged in the indictment. In the context of Rule 404(a)(1), "'pertinent' is read as synonymous with 'relevant.'" *United States v. Roberts*, 887 F.2d 534, 536 (5th Cir. 1989) (quoting *United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981)).

Courts have recognized that defendants may not introduce "good" character traits that are not relevant to the crimes charged. For instance, the First Circuit held that the traits of bravery, attention to duties as a police officer, and community spirit were not relevant in the prosecution of a police officer for mail fraud and perjury. *United States v. Nazzaro*, 889 F.2d, 1158, 1168 (1st Cir. 1989). Similarly, the Second Circuit held that evidence that the defendant's son suffered from cerebral palsy and that the defendant would never do anything to risk disabling himself from caring for the boy properly was not relevant in a RICO prosecution. *United States v. Paccione*, 949 F.2d 1183, 1201 (2nd Cir. 1991).

However, if a defendant testifies, his or character for truthfulness would be pertinent regardless of the crime charged. *United States v. Darland*, 626 F.2d 1235, 1237 (5th Cir. 1980). But even where the defendant does not testify, the defendant's character for truthfulness would be pertinent in a prosecution for a crime involving deceit or falsification. *See id*.

Finally, it should be noted that Courts have held evidence of the general character trait of "law abiding" is pertinent no matter what crime is charged in the indictment. *Hewitt*, 634 F.2d at 279-80 (5th Cir. 1981).

United States' Motion *in Limine* - 11

**b. Relevant character evidence must be in the form of opinion and/or reputation testimony.**

Once the defendant has established that the character trait he or she seeks to prove is relevant, the defendant may then prove the character trait only through reputation and/or opinion evidence. Fed. R. Evid. 405. A defendant may introduce specific instances of conduct *only* in cases where character or trait of character "is an *essential* element of a charge, claim or defense." Fed. R. Evid. 405(b) (emphasis added). Here, traits such as a defendant's generosity as an employer or compassion for his or her spouse or family are not related to the elements of the conspiracy to commit wire fraud, wire fraud, or money laundering charges facing the defendants, let alone essential.

**c. Limitation of the number of character witnesses.**

If a defendant shows that the character trait he or she seeks to prove is relevant and is using the proper means to prove the trait (opinion and/or reputation testimony), the final consideration is the number of character witnesses the trial court will allow. The trial court has discretion to limit the number of character witnesses. *See Michelson v. United States*, 335 U.S. 469, 480 (1948). Appellate courts have found no error when a trial court has limited the number of a defendant's character witnesses. *United States v. Scholl*, 166 F.3d 964, 972  (9th Cir. 1999) (three witnesses); *United States v. Johnson,* 730 F.2d 683, 688 (11th Cir. 1984) (three witnesses); *United States v. Koessel*, 706 F.2d 271, 275 (8th Cir. 1983) (three witnesses).

Respectfully submitted,

JAY R. COMBS
UNITED STATES ATTORNEY


LORINDA I. LARYEA
ACTING CHIEF, FRAUD SECTION
DEPARTMENT OF JUSTICE

*/s/ Adam L.D. Stempel*
ADAM L.D. STEMPEL
D.C. Bar No. 1615015
THEODORE M. KNELLER
D.C. Bar No. 978680
Fraud Section Trial Attorneys
Department of Justice
1400 New York Ave., NW
Washington, DC 20530
(202) 616-1546
Adam.stempel@usdoj.gov

ABE MCGLOTHIN, JR.
Assistant United States Attorney
Mississippi Bar No. 104247
600 East Taylor, Suite 2000
Sherman, TX 75090
469-298-5430
abe.mcglothin@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent via electronic filing to counsel for defendants on December 22, 2025.

/s/*Adam L.D. Stempel*
ADAM L.D. STEMPEL

**CERTIFICATE OF CONFERENCE**

I hereby certify that on December 22, 2025, the undersigned contacted counsel for defendants via email to seek the defendants' position on this motion. As of the time of filing, the government has received no response.

/s/*Adam L.D. Stempel*
ADAM L.D. STEMPEL